**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CRAIG T. BAILEY, | : | CIVIL ACTION NO. 07-2507 (MLC) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **MEMORANDUM OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

Plaintiff, Craig T. Bailey, applies for judicial review of
the final decision of defendant, Commissioner of Social Security
("Commissioner"), dated July 11, 2003, in which it was determined
that he was (1) not disabled during the period from October 15,
1997 through July 15, 2002, and thus was not entitled to
Disability Insurance Benefits ("DIB") and Supplemental Security
Income ("SSI"), and (2) disabled as of July 15, 2002, and thus is
entitled to DIB and SSI from that date forward.  (Dkt. entry no.
1, Compl.)  The Court has jurisdiction pursuant to 42 U.S.C. §
("Section") 405(g).  The Court, for the reasons stated herein,
will affirm the Commissioner's decision.

## BACKGROUND

Plaintiff filed a claim for DIB and SSI on January 5, 1998,
alleging that he became unable to work on October 10, 1997.
(Administrative Record ("A.R."), at 48.)  The Commissioner denied
the claim on May 19, 1998.  (Id. at 38.)  Plaintiff filed a

request for reconsideration of the denial on July 30, 1998.  (Id. at 40.)  The Commissioner affirmed the initial denial of the claim upon reconsideration on August 4, 1998.  (Id. at 39.)  Plaintiff filed a request for a hearing before an administrative law judge on November 7, 1998.  (Id. at 44.)  Administrative Law Judge Harold Hersoth ("ALJ Hersoth") conducted a hearing on May 18, 1999, in which plaintiff was represented by counsel.  (Id. at 18.)

ALJ Hersoth issued a decision on July 30, 1999, finding that, inter alia, (1) plaintiff "met the disability insured status requirements of the Social Security Act on October 10, 1997, the date [plaintiff] stated he became unable to work, and continues to meet them through December 31, 2000", (2) plaintiff "has not engaged in substantial gainful activity since October 10, 1997", (3) the medical evidence establishes that plaintiff "suffers from severe symptoms and impairments including coronary artery disease; hypertension; residuals from a history of a neck fracture; and was status post three myocardial infarctions", but "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4", (4) although plaintiff "has an underlying medically determinable impairment that could reasonably cause the symptoms he alleges", his "symptoms are not of such severity, persistence, or intensity as to preclude all work activity", (5)

2

plaintiff's "statements regarding the degree of his functional limitations are not fully credible as they are not supported by the evidence of record or clinical findings (20 C.F.R. [§§] 404.1529 and 416.929)", (6) plaintiff "has the residual functional capacity to perform work related activities at the light exertional level" and "[h]is exertional capacity for work at the light exertional level is not compromised by any nonexertional limitations (20 C.F.R. [§§] 404.1545 and 416.945)", (7) plaintiff "is unable to perform his past relevant work", (8) plaintiff "has the residual functional capacity to perform a full range of light exertional work (20 C.F.R. [§§] 404.1567 and 416.967)", (9) plaintiff is "thirty-one years old, which is defined as a younger individual (20 C.F.R. [§§] 404.1563 and 416.963)", (10) plaintiff "has a ninth grade education", (11) plaintiff "has no acquired work skills which can be applied to meet the requirements of semiskilled or skilled work activities of other work (20 C.F.R. [§§] 404.1568 and 416.968)", (12) "Section 404.1569 of Regulations No. 4, Section 416.969 of Regulations No. 16 and Vocational Rule 202.17, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering [plaintiff's] residual functional capacity, age, education, and work experience, he is not disabled", and (13) plaintiff "was not under a disability as defined in the Social Security Act, at any time through the date of the decision

(20 C.F.R. [§§] 404.1520(e) and 416.920(e))". (Id. at 15-16.)
ALJ Hersoth concluded plaintiff was not entitled to DIB or SSI
payments. (Id. at 16.)

Plaintiff filed a request for review of Hersoth's decision
by the Appeals Council on August 20, 1999. (Id. at 8.) The
Appeals Council denied plaintiff's request for review on November
1, 2000, leaving ALJ Hersoth's decision as the final decision of
the Commissioner in plaintiff's case. (Id. at 5-6.) Plaintiff
applied for review in this District on December 20, 2000. (See
Civil Action No. 00-6142, Bailey v. Commissioner of Social
Security, dkt. entry no. 1, Compl.) The Court remanded the
action for further administrative action "pursuant to sentence 4
of 42 U.S.C. § 405(g)" on consent of the parties on May 3, 2002.
(A.R., at 189-90.) The Appeals Council vacated the final
decision of the Commissioner, and remanded the action to an
Administrative Law Judge for further proceedings on July 2, 2002.
(Id. at 191-92.) Specifically, the Appeals Council directed the
Administrative Law Judge to, inter alia, (1) "obtain additional
evidence concerning [plaintiff's] mental impairment in order to
complete the administrative record", (2) "[a]t step three of the
sequential evaluation . . . identify the specific listings
considered and provide rationale regarding why the [plaintiff's]
impairments do or do not meet or equal the requirements of the
listings", and (3) "determine if the [plaintiff's] earnings after

4

the alleged onset date of disability represent substantial
gainful activity". (Id.)

Administrative Law Judge Joseph A. Pachnowski ("ALJ
Pachnowski") conducted a hearing on March 26, 2003 ("3-26-03
Hearing"), in which plaintiff was represented by counsel. (Id.
at 168.) ALJ Pachnowski issued a decision on July 11, 2003,
finding that, inter alia, (1) plaintiff "met the disability
insured status requirements of the [Social Security] Act on
October 15, 1997, the date he alleged he became unable to work,
and has earned sufficient quarters of coverage to remain insured
through March 31, 2003", (2) plaintiff "has not engaged in
substantial gainful activity since July 15, 2002", (3) "[t]he
medical evidence establishes that [plaintiff] has the following
severe impairments: coronary artery disease, high blood pressure,
neck pain and anxiety/depression", (4) plaintiff "has no
impairment that meets or equals the criteria of any impairment
listed in Appendix 1, Subpart P, Regulations No. 4", (5)
plaintiff's "assertions concerning his impairments, pain and
other symptoms, and their impact on his ability to work on and
after July 15, 2002, are credible", (6) until July 15, 2002,
plaintiff "had the residual functional capacity to perform a
full, wide or significant range of sedentary work; i.e., he could
lift and carry [ten] pounds occasionally and [five] pounds
frequently, and could walk for [one] hour, stand for [one] hour
and sit for [six]-hours in an [eight]-hour workday", (7)

5

beginning on July 15, 2002, plaintiff "has the residual functional capacity to perform less than a full, wide or significant range of sedentary exertional work; i.e., he can lift and carry up to [ten] pounds, but cannot stand, walk or sit for prolonged periods", and his "ability to sustain attention and concentration for extended periods is limited due to pain, fatigue and the side effects of his medications", (8) plaintiff "is unable to perform the requirements of his past relevant work", (9) plaintiff was "27-years old on October 15, 1997 (his alleged onset date), and he was 34-years old on July 15, 2002 (the established onset date); i.e., a younger individual age 18-44", (10) plaintiff "has a limited education", (11) plaintiff "has a semi-skilled work background; however, his skills are not transferable to other work within his residual functional capacity", (12) until July 15, 2002, "based on an exertional capacity for a full, wide or significant range of sedentary work, and [plaintiff's] age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.25", (13) beginning on July 15, 2002, "based on an exertional capacity for less than a full, wide or significant range of sedentary work, and [plaintiff's] age, education, and work experience, he cannot make an adjustment to any work which exists in significant numbers in the national economy; a finding of 'disabled' is therefore reached within the guidelines of Section 201.00(h) of the Medical-Vocational Rules", (14) plaintiff "is expected to be

unable to engage in any substantial gainful activity for a
continuous period of at least 12 months", (15) plaintiff's
"history of alcoholism and substance abuse is not a factor
material to the finding of disability", and (16) plaintiff "has
been under a disability, as defined in the Social Security Act .
. . since July 15, 2002, but not prior thereto (20 C.F.R.
§§404.1520(f) and 416.920(f))".  (Id. at 165-66.)

ALJ Pachnowski thus concluded that plaintiff was (1)
entitled to "a Period of Disability commencing on July 15, 2002,
but not prior thereto, and to [DIB] under sections 216(i) and
223, respectively, of the Social Security Act", and (2) "disabled
under section 1614(a)(3)(A) of the Social Security Act, beginning
on July 15, 2002, but not prior thereto, and that [plaintiff's]
disability has continued at least through the date of this
decision", and thus plaintiff was entitled to SSI if he met the
non-disability requirements of the Social Security Act.  (Id. at
166-67.)  Plaintiff requested review of ALJ Pachnowski's decision
by the Appeals Council on August 1, 2003.  (Id. at 145.)  The
Appeals Council denied plaintiff's request for review on April 3,
2007, leaving ALJ Pachnowski's decision as the final decision of
the Commissioner in plaintiff's case.  (Id. at 140.)  Plaintiff
applied for review here on May 29, 2007.  (Dkt. entry no. 1.)

**DISCUSSION**

**I.    Standard of Review**

The Court may review a "final decision of the Commissioner of
Social Security" in a disability proceeding.  42 U.S.C. § 405(g).
The Court may affirm, modify, or reverse the Commissioner's
decision with or without remanding the case for a rehearing.  <u>Id.</u>
However, this judicial review is limited.  The Court must affirm
the Commissioner's decision regarding disability benefits if an
examination of the record reveals that the findings of fact are
supported by substantial evidence.  <u>Id.</u>; <u>Reefer v. Barnhart</u>, 326
F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the
context of a social security matter is defined as less than a
preponderance of the evidence but "more than a mere scintilla",
<u>i.e.</u>, such evidence "as a reasonable mind might accept as
adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402
U.S. 389, 401 (1971) (quotation and citations omitted).  This
standard "is deferential and includes deference to inferences
drawn from the facts if they, in turn, are supported by
substantial evidence."  <u>Schaudeck v. Comm'r of Soc. Sec. Admin.</u>,
181 F.3d 429, 431 (3d Cir. 1999).

Despite the deference given to administrative decisions
under this standard, the Court "retain[s] a responsibility to
scrutinize the entire record and to reverse or remand if the . .

. decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  "That the record may contain evidence which would have supported a different conclusion does not undermine the Commissioner's findings so long as there exists substantial support for the Commissioner's decision in the record." Ahearn v. Comm'r of Soc. Sec., 165 Fed.Appx. 212, 215 (3d Cir. 2006).  The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion. Schaudeck, 181 F.3d at 435.

## II.  Determining Eligibility for Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy". Id. at § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled". In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity". 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Id. at § 404.1520(b). If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step. Id. at § 404.1520(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions. Id. at §§ 404.1521(a)-(b), 416.921(a)-(b). A claimant not meeting this requirement is not disabled. Id. at § 404.1520(c). Thus, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience. Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is

listed in section 20, part 404, subpart P, appendix 1 of the CFR. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage. Id. at § 404.1520(d). If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four. Id. at § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past. Id. at § 404.1520(a)(4)(iv). The claimant, if able to resume the previous work, will not be considered disabled. Id. If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the national economy. Id. at §§ 404.1520(a)(4)(v), 404.1520(e). This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience. Id. A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy. Id. at § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process. Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would

allow him or her to engage in alternative substantial gainful
employment.  Id.

## III. Analysis of Plaintiff's Claims

At step five of the analysis, ALJ Pachnowski concluded that
plaintiff's "allegations as to his impairments, pain and other
symptoms, and their impact on his ability to work prior to July
15, 2002 seem exaggerated and are not supported by the medical
evidence of record".  (A.R., at 162.)  Thus, "[f]or the period up
to July 15, 2002, as [plaintiff] was capable of performing a full
range of sedentary work, a finding of 'not disabled' is directed
by Medical-Vocational Rule 201.25".  (Id. at 164.)

ALJ Pachnowski also concluded that plaintiff's "statements
concerning his impairments, pain, and other symptoms, and their
impact on his ability to work on and after July 15, 2002, are
generally credible in view of the reports of the treating and
examining medical practitioners".  (Id. at 162.)  Thus, "for the
period beginning on July 15, 2002, [plaintiff's] capacity to
perform sedentary work is further reduced by non-exertional
limitations that narrow the range of work he can perform".  (Id.
at 164.)

Plaintiff contends that the determination that he was not
disabled before July 15, 2002 is not supported by substantial
evidence.  (Dkt. entry no. 7, Pl. Br., at 12.)  He also argues
that this determination was erroneous because Pachnowski's

analysis "did not include" plaintiff's subjective symptoms and non-exertional limitations, including chest pain, angina, shortness of breath, neck pain and stiffness, "postural and manipulative limitations", anxiety, depression, and panic attacks.  (Id. at 20-22.)

        In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects."  Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected.  Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  Id.  The ALJ is not required to reference every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law."  Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quotation and citation omitted).  This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  The Court, without an indication as to

13

what evidence the ALJ considered or rejected, "cannot tell if significant probative evidence was credited or simply ignored." Id. Although the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," the ALJ's findings must provide "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

ALJ Pachnowski discussed all of the medical evidence in the record, as well as plaintiff's testimony at the 3-26-03 Hearing. (See A.R., at 156-61.)  Contrary to plaintiff's arguments, ALJ Pachnowski specifically noted the existence of all of the symptoms and non-exertional limitations alleged by plaintiff. (See id.)  However, he concluded that these allegations were not supported by the medical evidence in the record before July 15, 2002.  (Id. at 162.)  Thus, he provided an adequate explanation for why he rejected plaintiff's allegations of his subjective symptoms and non-exertional limitations before July 15, 2002. See Cotter, 650 F.2d at 482.

This conclusion is supported by substantial evidence in the record, moreover.  There is evidence that plaintiff suffered from some anxiety and depression, and had been taking the medication Paxil, before July 15, 2002.  (See A.R., at 107 (11-24-97 Medical History Form), 109 (1-16-98 Ambulatory Care Referral To Subspecialty Form), 111 (12-29-97 Ambulatory Care Progress Note), 112 (12-22-97 Ambulatory Care Progress Note), 113 (11-24-97

14

Ambulatory Care Progress Note), 116 (1-16-98 Adult
Problems/Summary List And Health Maintenance Profile Form).)

There is no evidence that plaintiff went to see a
psychologist or psychiatrist for further treatment for anxiety or
depression before July 15, 2002, however.  (See A.R.)  Further,
it is unclear whether plaintiff was consistently taking
medication for anxiety or depression before July 15, 2002.  For
example, a report by Paul Friedman for the state of New Jersey's
Department of Labor, Division of Disability Determination
Services, dated March 12, 1998 ("3-12-98 Friedman Report") does
not note that plaintiff was taking medication for anxiety or
depression.  (Id. at 123.)  There also is no mention in that
report of plaintiff complaining of anxiety or depression or
seeking treatment for anxiety or depression.  (See id. at 122-
24.)

Plaintiff's own submissions also provide evidence that his
anxiety and depression did not preclude him from work before July
15, 2002.  On a form entitled "Disability Report", dated December
16, 1997 ("12-16-97 Disability Report"), plaintiff lists his
disabling conditions as heart disease, high blood pressure, and
"residuals of neck fracture" and states that these conditions
cause "[d]ifficulty in breathing, chest pain when doing strenuous
duties . . . and also the medications . . . make me feel overall
drained of any stamina".  (A.R., at 65, 70.)  There is no mention
of anxiety or depression as disabling conditions, or that

15

plaintiff was seeking treatment or taking medication for these conditions.  (See id. at 65.)  Further, on a form entitled "Claimant's Medications", dated May 18, 1999 ("5-18-99 Medications Form"), plaintiff lists several medications, none of which treat treating anxiety or depression.  (Id. at 128.)

There is also evidence in the record that plaintiff's anxiety or depression at that time would not have precluded him for working at least a sedentary job before July 15, 2002.  For example, the 3-12-98 Friedman Report states that plaintiff "lives alone and is able to take care of his daily activities including shopping and maintaining his living quarters".  (Id. at 123.)  Further, on a form entitled "Work Activity Report - Employee", dated January 5, 1998 ("1-5-98 Work Activity Report"), plaintiff indicates that he stopped working as a carpenter because of "shortness of breath", not anxiety or depression.  (Id. at 61.)  ALJ Pachnowski also noted that plaintiff's "earnings record reflects income of $16,147.90 in 1999, $968.00 in 2000, $144.50 in 2001, and $4,465.00 in 2002", indicating "some evidence of his ability to work".  (Id. at 157.)  This evidence supports ALJ Pachnowski's conclusion that even if plaintiff did have anxiety or depression prior to July 15, 2002, it would not have precluded him from performing sedentary work.

There is also substantial evidence in the record that plaintiff's neck pain, chest pain, shortness of breath, and other subjective symptoms related to his heart condition and high blood

16

pressure would not have precluded him from engaging in sedentary work before July 15, 2002.  For example, a "Physical Residual Functional Capacity Assessment" by a state agency medical consultant, J.R. Michel, M.D., dated April 9, 1998 ("4-9-98 Michel Assessment"), notes that at that time, plaintiff could (1) occasionally lift twenty pounds, (2) frequently lift ten pounds, (3) stand or walk for about six hours in an eight-hour work day, (4) sit for about six hours in an eight-hour work day, and (5) push or pull in an unlimited manner.  (A.R., at 72, 78.)  The 4-9-98 Michel Assessment noted no other limitations on plaintiff's residual functional capacity.  (See id. at 71-78.)  Similarly, a "Physical Residual Functional Capacity Assessment" by a state agency medical consultant, R.T. Walsh, M.D., dated April 2, 1998 ("4-2-98 Walsh Assessment") notes the same exertional limitations to plaintiff's residual functional capacity.  (A.R., at 80, 86.) The 4-2-98 Walsh Assessment also notes that plaintiff could climb, balance, stoop, kneel, crouch, and crawl "occasionally". (Id. at 81.)  There are no other limitations to plaintiff's residual functional capacity noted.  (See id. at 79-86.)

The 4-2-98 Walsh Assessment and the 4-9-98 Michel Assessment are supported by substantial evidence in the record.  See Neal v. Comm'r of Soc. Sec., 57 Fed.Appx. 976, 979-80 (3d Cir. 2003) (noting that state agency medical consultant assessment, when supported by evidence in record, is substantial evidence).  For example, in the 12-16-97 Disability Report, plaintiff indicates

17

that his conditions preclude him from doing "strenuous" work
only.  (A.R., at 65.)   The 3-12-98 Friedman Report also states
that plaintiff "had returned to work, but develop[ed] anginal
type chest pains with minimal exertion", however "during his day
to day activity, [plaintiff] rarely gets anginal pains unless he
over exerts himself".  (Id. at 122.)   Thus, the report notes that
plaintiff had "occasional angina on significant exertion".  (Id.
at 123.)   It further states that plaintiff experienced shortness
of breath "on exertion".  (Id. at 123.)   Similarly, the 11-24-97
Ambulatory Care Progress Report Note states that plaintiff was
experiencing shortness of breath "on exertion", but no chest pain
"at present".  (A.R., at 113.)   Further, the 12-22-97 Ambulatory
Care Progress Note states that plaintiff was experiencing a
decrease shortness of breath, and chest pain once or twice a
week.  (Id. at 112.)   The 12-29-97 Ambulatory Care Progress Note
notes that plaintiff was experiencing "no chest pain" at that
time.  (Id. at 111.)

    The 3-12-98 Friedman Report also notes that although
plaintiff was experiencing "neck stiffness and pain on movement",
he did not have "any motor or neurological deficits" and was not
taking any medication for this condition.  (Id. at 123.)
Further, upon physical examination, plaintiff was in "no obvious
distress", his "[h]eart sounds were regular", and his
"[e]xtremities showed no edema or clubbing".  (Id.)   A chest x-
ray revealed a "normal size heart and clear lung fields".  (Id.)

18

A cardiogram "showed a regular sinus rhythm". (Id.)  Further,
although a "small Q wave was noted in lead three with inverted T
waves in lead three", the rest of the cardiogram "appeared
normal". (Id.)  Plaintiff's high blood pressure also was "fairly
controlled". (Id. at 124.)

The Court also notes that in a letter dated January 22,
1997, from John S. Clemente, M.D. ("1-22-97 Clemente Letter")
indicates that at that time, plaintiff had been "non-compliant"
in his follow-up treatment because he had been a "no-show . . .
meaning he does not keep his scheduled appointments". (Id. at
99.)  Further, as noted supra, plaintiff's earnings records
indicate that he was able to work before July 15, 2002, despite
his impairments and limitations. (Id. at 157.)

The Court also finds that ALJ Pachnowski's finding that
plaintiff's impairments worsened after July 15, 2002, the date of
plaintiff's latest hospitalization and surgery for his heart
condition, is supported by substantial evidence. (See A.R., at
159, 163-64.)  In particular, plaintiff's anxiety and depression
appeared to worsen in severity and persistency around this time,
as noted by ALJ Pachnowski. (See id. at 160-61.)  ALJ Pachnowski
noted that office notes from plaintiff's treating family
physician, Neil Agrawal, from July 2002 through March 2003
"reflected assessments of . . . depression/panic disorder/
agoraphobia, and anxiety". (Id. at 161.)  Further, in a report
by Jack Baharlias for the state of New Jersey's Department of

19

Labor, Division of Disability Determination Services, dated
November 27, 2002 ("11-27-02 Baharlias Report"), it is noted that
plaintiff was suffering from panic attacks and agoraphobia.  (Id.
at 214 (11-27-02 Baharlias Report).)  In February 2003, plaintiff
underwent a psychiatric evaluation, and was diagnosed with
"anxiety disorder due to heart condition with panic attacks and
depression", and was prescribed Xanax and Lexapro.  (Id. at 253-
57 (2-19-03 Preferred Behavioral Health of New Jersey Psychiatric
Evaluation).)  Also, on a form entitled "Claimant's Medications",
dated March 26, 2003, plaintiff notes that he takes Xanax and
Lexapro, for his anxiety, agoraphobia, and depression.  (Id. at
223.)  Moreover, a letter from Julio Del Castillo, M.D., of
Preferred Behavioral Health of New Jersey, dated April 7, 2003,
states that plaintiff "is under psychiatric treatment . . .
because [of] a mental disorder . . . he is disabled".  (Id. at
283.)

     Plaintiff also argues that ALJ Pachnowski erred by
questioning his credibility and rejecting his subjective
testimony without explanation.  (Pl. Br., at 23.)  However,
Pachnowski discussed the medical evidence and then explained that
plaintiff's "allegations as to his impairments, pain and other
symptoms, and their impact on his ability to work prior to July
15, 2002, seem exaggerated and are not supported by the medical
evidence of record".  (Id. at 158-62.)  Thus, Pachnowski did
provide an explanation for his conclusion that plaintiff's

subjective testimony regarding his impairments before July 15, 2002 lacked credibility.  See Cotter, 650 F.2d at 482 (stating that short sentence or paragraph explaining basis for decision to reject evidence is sufficient).

Plaintiff also argues that ALJ Pachnowski erred in determining the "disability onset date" because "[t]here was evidence and testimony [that] [plaintiff's] non-exertional limitations existed and were disabling prior to July 15, 2002". (Pl. Br., at 23-26.)  Plaintiff cites to Walton v. Halter, 243 F.3d 703 (3d Cir. 2001), to support this contention, and appears to suggest that Pachnowski should have utilized a medical advisor to help infer the proper disability onset date.  (Id. at 25-26.)

Walton is inapposite here.  The Third Circuit has since stated that Walton stands for the proposition that an "ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period [are] not available".  Beasich v. Comm'r of Soc. Sec., 66 Fed.Appx. 419, 434 n.18 (3d Cir. 2003); see also Jakubowski v. Comm'r of Soc. Sec., 215 Fed.Appx. 104, 107-08 (3d Cir. 2007) (affirming judgment of district court affirming decision of Commissioner, and distinguishing case from Walton, because ALJ had access to adequate medical records from relevant time period, and records did not support plaintiff's alleged onset date).  Here, the alleged onset date is not far in the

past, and there are adequate medical records for the relevant time period.  As discussed supra, plaintiff's medical records, submissions, earnings record, and the 3-12-1998 Friedman Report indicate that plaintiff's impairments, including any non-exertional limitations, would not have precluded him from performing sedentary work before July 15, 2002.

Plaintiff also argues that Pachnowski erred by relying on the Medical Vocational Guidelines to establish that plaintiff was not disabled before July 15, 2002.  (Pl. Br., at 26-28.) Plaintiff argues that (1) his non-exertional limitations precluded the use of the Medical Vocational Guidelines, and (2) vocational testimony or evidence was required to establish that he was not disabled under step five.  (Id.)

This Court disagrees.  "Vocational expert testimony must only be used when a claimant has severe exertional and nonexertional impairments".  Maddaloni v. Astrue, No. 07-5397, 2008 WL 2906094, at *5 (D.N.J. July 28, 2008) (quotation and citation omitted).  As discussed supra, ALJ Pachnowski properly concluded that plaintiff's "allegations as to his impairments, pain and other symptoms, and their impact on his ability to work prior to July 15, 2002, seem exaggerated and are not supported by the medical evidence of record".  (A.R., at 162.)  Pachnowski thus concluded that plaintiff did not have severe non-exertional limitations precluding him from performing sedentary work before July 15, 2002.  (Id. at 164.)  It was only after July 15, 2002

22

that plaintiff had severe non-exertional limitations that further reduced his capacity to perform sedentary work.  (Id. (stating that after July 15, 2002, plaintiff's "capacity to perform sedentary work is further reduced by non-exertional limitations").)  Thus, ALJ Pachnowski's use of the Medical Vocational Guidelines at step five was not erroneous.  See Maddaloni, 2008 WL 2906094, at *5 (affirming decision of ALJ, and noting that vocational expert was not necessary because ALJ properly determined that plaintiff did not have severe non-exertional mental impairment); Levya v. Comm'r of Soc. Sec. Adm'r., No. 07-553, 2008 WL 2229834, at *10 (D.N.J. May 28, 2008) (affirming decision of Commissioner on same grounds).

### CONCLUSION

For the reasons discussed supra, the Court will affirm the Commissioner's determination that plaintiff was not disabled before July 15, 2002.  The Court will issue an appropriate order.


                                    s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge


**Dated:**    August 28, 2008